Case number 20-5021. Latanya Wyatt v. Nissan North America Inc. Oral arguments not to exceed 15 minutes per side. Mr. Douglas B. Janney III for the appellant. May it please the court. My name is Doug Janney. I represent the appellant in this case, Latanya Wyatt. If the court please, I would like to reserve four minutes for rebuttal. Your honors, we respectfully request that the court reverse the judgment of the district court granting summary judgment to the defendant appellee Nissan North America on Ms. Wyatt's Title VII hostile work environment claim, her ADA failure to accommodate claim, and her retaliation claims under Title VII, the ADA, and the FMLA. With respect to the hostile work environment claim under Title VII, the district court correctly held that a reasonable jury could find that Ms. Wyatt was subjected to a sexually hostile work environment based upon, as the district court stated, continuous, not isolated, inappropriate touching from September through December 2015. The district court, however, incorrectly dismissed Ms. Wyatt's hostile work environment claim based on the Supreme Court's affirmative defense to liability set forth in the Farragher and Ellerth cases. Nissan did not argue in its motion for summary judgment the Farragher-Ellerth defense. It did not argue that it was entitled to that defense or imply or in any way argue that defense. Further, the district court gave Ms. Wyatt no notice that it would grant summary judgment based upon the Farragher defense. Rule 56F requires the district court to give the plaintiff notice if it is going to dismiss a claim on a ground not advanced by the moving party. Your Honors, there has been a case that this court issued after we filed our reply brief. It's George v. Youngstown State University, 966 F. 3rd, 446 at page 467 and note 6. There the court reiterated that a district court cannot dismiss a case on summary judgment without giving notice and a reasonable opportunity to respond for the plaintiff to respond based upon an argument that the defendant did not advance and that's what we have here. The district court correctly held that a reasonable jury could find that the harasser in this case, Walter Mullen, was a supervisor. Nissan's own sexual harassment investigation report stated that based upon Walter Mullen's authority over Tanya Wyatt and repeatedly called him a member of management. So that's a piece of evidence that the court can look to and a reasonable jury could look to in finding that he was a supervisor. Furthermore, Billy Davis and other Ms. Wyatt supervisors relied on Walter Mullen's recommendation to him and statement to him that he removed Ms. Wyatt from a large project that she was working on under Mr. Mullen. And that removal was within the space of a month, is that correct, from the most egregious fact that we know of of the the attack or sexual harassment in the hotel room? That's correct, your honor. That event occurred on September 2nd, 2015. Ms. Wyatt then confronted Mullen on September 22nd, 2015 and said that she was his continuing conduct made her very uncomfortable and then nine days after she was removed from that major project on October the 1st. She was removed by Davis at the behest of Mullen, is that correct? That is correct, your honor, and that's page Davis's deposition at page 72, which is page ID number 1702, makes clear that Mullen recommended and told Davis he wanted her off the project and Davis took her off the project. Your honors, Nissan also did not argue in its summary judgment brief that Ms. Wyatt was not subjected to a tangible or adverse employment action with respect to any of her claims in this case, not only the sexually hostile work environment claim, but all three retaliation claims. It did not argue that she was not subjected to an adverse employment action. The district court then went on to hold, in applying the Farragher defense, went on to hold that Ms. Wyatt waited too long to report the sexual harassment and respectfully, your honor, she did not wait too long because the harassment was ongoing and continuous from September to early December 2015 and the district court acknowledged that fact in its holding. It had a blocked paragraph where it acknowledged that the harassment was continuous and ongoing. That's why it correctly held she was subjected to a hostile work environment. But I have to ask you, Mr. Janney, during that whole time, what more did Ms. Wyatt do to relieve herself of this harassment and burden? Did she complain to him? Did she go anywhere else? I assume she did. How much time did it take for her to say, you know what, I don't have to put up with this. Somebody at this company will help me. Yes, your honor. Here are the things that Ms. Wyatt did. First, when the hotel incident occurred on September 2nd, Ms. Wyatt rebuffed that, rejected that, said take me back to the office right now, which was about a mile away. And so that was one. Second, on September 22nd, 2015, she confronted Mullen about his continuing ongoing conduct and told him to knock it off. It made her very uncomfortable. Third, the next time she reported it was to another manager, David Butler. Yes. Butler was how long after? That was on November the 10th. So that was... How many months did she put up with it before she went to Butler? This is kind of... I'm just Yes, your honor. She put up with it from September and October and then in early November went to David Butler and finally had had enough. After telling Mullen on two separate occasions, September 2nd and September 22nd at least, that to stop and he didn't. Then she went to Butler on November 10, 2019, told him about the continued unwanted touching, that it made her very hotline nine days later on November 19th in a 20-minute telephone call to the compliance hotline. I wonder why he waited nine days. Your honor, I'm not sure why he waited. Maybe he thought it would stop, but eventually he became compelled to. It's undisputed. Give me the answer to that. I mean, you obviously took his deposition. Was he asked about why the delay? Your honor, I can't remember if I asked him that or not. I know that he did report it nine days later. He probably did answer. I'll look that up during the break. But it's undisputed that he reported it on November the 10th in the 20-minute phone call to the ethics line. And then from that period, Nissan should have done something on November 10th when Butler knew about it. He was a manager charged with a responsibility. He was supposed to report it immediately, wasn't he? Under Nissan's policy, your honor, he said must report it immediately to human resources. And so this manager, Mr. Butler, did not do that. He reported it nine days later. And then at that point, Nissan didn't do anything from November 19th until December 3rd when Ms. Wyatt went back to it and reported it again. So eventually the HR people did confront Mullen. And Mullen was given the impression that he would be fired. And so he resigned, correct? Correct, your honor. They did not confront Mullen until December the 9th. So from November the 10th was her first report to management. 29 days later, December 9, 2015, they interviewed Mullen. But during that whole 29-day period, they didn't suspend Mullen. They didn't do anything to separate Ms. Wyatt from Mr. Mullen. He continued, it's undisputed, he continued to sexually harass her from November 10 until December 9, 2015. Does that mark a conclusion then to the sexually hostile work environment claim? It does. Okay, so but then you have retaliation claims. Yes, your honor. The district court incorrectly dismissed the retaliation claims on the basis that Ms. Wyatt could not establish a prima facie case. As the court is aware, that is a burden that's easily met. With regard to the October 1 removal from the major project, that happened nine days after Ms. Wyatt complained and told Mullen to stop on September 22nd. Mullen then told Davis to remove her from the project and he did. With regard to this MPI, manager performance improvement expectation plan, that was premature, your honors. This is one of the most pretextual pieces of evidence in the case. The MPI was issued on December 15th or in December 2015. Davis testified that you can't issue an MPI until an employee has a below expectations per annual performance review. Ms. Wyatt's last two annual performance reviews were meets expectations or above expectations in 10 out of 10 categories. Davis went ahead and gave her this three months before the review period was up. Fiscal year 2015 did not end until March 31st, 2016, yet as soon as she took medical leave and he admitted he knew she took medical leave for back surgery in December 2015 while she was on leave, he wrote the MPI. He held her medical leave against her when she came back. He gave her the MPI so that he could give her a negative performance review and thereby holding her medical leave against her because she was out for five months due to the back surgery and complications from it. The FMLA says you can't use taking a medical leave as a negative factor in employment actions. That's what happened here. How exactly did he use the medical leave against her? Your Honor, I see I'm out of time. May I answer? Yes. Yes. Your Honor, by not giving her any opportunity to meet the expectations that he set forth in the MPI. Again, he did the MPI in December 2015 and then before she ever came back for medical leave in April 2016, he created a below expectations annual performance review without ever giving her opportunity to meet any of the expectations in the MPI that he created. By doing that, you're effectively holding the employee's use of five months of medical leave for a serious health condition, back surgery and complications against her. When she came back, she had no opportunity to try to meet those expectations. Davis had planned all along to paper the file and give her the MPI and give her the performance review. He ended up reading the attorney's letter while she was on leave. He ended up reading her EEOC charge. All the circumstantial evidence supports the retaliation. Thank you, Your Honor. Thank you. Mr. Graham. Good morning. May it please the court. My name is Stanley Graham for the appellee Nissan North America. The district courts properly considered each of the arguments before by Ms. Wyatt and by Nissan in ultimately granting summary judgment for Nissan. While there is certainly some disagreement about the various ways about which summary judgment could be granted, there are multiple avenues by which summary judgment is appropriate in this case. The district court took one of those and it reached the right decision in granting summary judgment. And here we respectfully submit that the court should affirm the lower court's decision and affirm summary judgment for Nissan. With respect to the various arguments that have been put forward, this entire case is against the factual backdrop of an employee, Latanya Wyatt, who was a project manager from the time of her employment in 2013. She'd been a contractor for a period of time in 2012 as well. All the way up until today, she's still employed as a project manager. She has been on a medical leave since February of 2017 for various issues that she has stated. It's a leave that she sought. It's a leave that she continues to be on today. Ms. Wyatt, during the course of her employment, has now been on four lengthy leaves, which have each been considered and approved. And each of those the shortest of which was four months. I understand that that's part of the entire calculus, but what this case is really about is about the specifics of a sexual harassment claim. And the automobile accident and the time off for that, I'm sure they're problematic for the employer, but that's not the issue here. You know, the issues that we're concerned about is the procedure and the decision that related to her to the sexual harassment claim. And it seems to me that the district court below did a really good job of mustering the facts, but then in its ultimate decision, relied on December 3, the plaintiff's report to Nissan as the time frame that was significant, and then questioned both the delay from the September assault and until the time of that report. But that ignores, doesn't it, the November 10 report to Butler. Of course it ignores her complaint to Mullen himself, which I am sure was a difficult thing to do, to go tell the person who is your supervisor that you do not want to touch you any longer. But she did that. On the 2nd of September, she was assaulted in the hotel and 20 days later, she went in and said, please don't do this to me anymore. You know, she comes back and I think the testimony is she was scared, she was upset, you know, then she gives it a little bit of time and rather than stopping, the guy continues. And so she goes back to him and she says, please leave me alone. Nine days later, she's removed from the project she was working on. And then a month and 10 days later, she tells, nothing else happens. She's off her job. So then she goes and she talks to Butler and he waits nine days before he reports it. Nothing else is said to her. So on December 3, she reports it herself. But that's not the time period that's in question. I mean, if we are looking at what she says she did in this circumstance, 20 days after he assaulted her, she said to him, do not do this. And then about a month and a few days later, she reported it to management, to the management that was supposed to immediately report it up the chain. Now, explain to me why that is not an adequate response, that why is this a time period that doesn't include her actual initial report to a non-harassing supervisor? Your Honor, thank you. I'm happy to address that. There are a number of reasons why summary judgment is nonetheless appropriate for Nissan in this matter. And the backdrop that I was attempting to explain is somebody who is familiar, who has been treated very fairly from the time of her being granted, has been responded to in a favorable manner consistently. So this is a backdrop against which she knew how to bring concerns forward. She had regular interactions with human resources. Counsel, let me ask you, for a woman employee who is being sexually harassed by her boss, is that not a different coming forward and talking to management than calling management up and saying, I've been in a car accident and I need surgery? Your Honor, I'm not suggesting that reporting the need to take leave for a car accident is the same as reporting harassment. I would be remiss if I were suggesting that. Nonetheless, the Farragutter-Ellerts defense does include within it an obligation to take reasonable steps to report alleged harassment. What was not reasonable about the list of time frames that I just referenced? Well, Your Honor, the time frame is as such. First, it is undisputed that the first time that anything was ever said about the hotel room was December 3rd to HR. Nothing was said to Mr. Butler about it, and Ms. Wyatt didn't say anything to anybody about it to human resources until December 3rd. Within 10 days... But she's reported on November 10 touching, handling her, making her feel uncomfortable. I mean, this is not just somebody who was making jokes. This is a guy who's coming up and touching her. And Your Honor, I... And that's what she reported on November, right? The record reflects that she said something to Mr. Butler on November 10th, and something that she noted in a journal, in her own journal entry, that she said something to him about wanting Mr. Mullen to leave her alone, that he was making her uncomfortable. Where is that effect? But at that point, by November 10th, this is more than two months after the incident that she alleges in the hotel room. That alone, period, is alone evidence that would reflect in support that she did not promptly report this conduct, despite the ability to do so. Reporting it to Mr. Mullen, respectfully, reporting, I believe it's still law in the circuit, that complaining to the person who you allege has mistreated you is not the protected activity. It is complaining to somebody who is in a position to do something about it. And here, it wasn't until more than two months later... Does that law vary whether the person is a supervisor or a co-employee? I don't believe it makes a difference, Your Honor. And here, Mr. Mullen, I do want to point out that Mr. Mullen, whether or not he was a member of management or not, that is not the determinative issue under Farragut-Eller. It goes far beyond that. It requires a much more specific showing that the individual be in a position to take tangible employment action, a significant change in responsibility. Let me ask you, Mr. Davis testified that he removed her from the ABC project at the behest of Mullen. And that, well, that is actually not, it wasn't at Mr. Mullen's request. Mr. Davis himself, Mr. Mullen was one of many who had concerns about Ms. Davis's performance, which dates back to 2013, I might add. This is an individual who had been... In the testimony, didn't Mr. Davis say that part of the reason, all or part, I'm not sure exactly, of the reason that he removed her included what Mullen had said to him, that it was Mullen's request? He certainly would take into account the feedback of the person who was responsible for the overall project. I might add, though, that Ms. Wyatt being removed from that project actually relieved her of job duties that she is claiming she should have been relieved of as part of her reasonable accommodation claim. One of her complaints here is that she had too much work to do. Being removed from this project, I would also note, being removed from this project is not being suspended. It's not having your pay doc. It's not an adverse or tangible employment action. She's got other things that she... Your Honor, she is making over $100,000 a year in this position. She's a salaried employee. Her pay was not reduced. Her benefits were not affected. There was nothing about a... And she had been removed from projects previously under prior management as well. So this wasn't even the first time that she had been removed from a project. I'm struggling with that because of the relationship of time. And Your Honor, if I may... I don't know what that would say to you, but if I was the woman that that was said to, I'd have thought, I opened my mouth and this is what happens. Well, of course, the... I told this man, and I told him to leave me alone, and now I moved off this project. And Your Honor, whether or not Ms. Wyatt subjectively perceived it as being connected, of course, the causation requirement is far more than that. There needs to be evidence of actual causation. Temporal proximity here is not enough, and it's not enough for a number of different reasons. And that is that if something... If there are events that are ongoing and something happens in the midst of those, such as Ms. Wyatt's contending here that she's talked to Mr. Mullen on 10 days or so prior to her removal from the project. If something is under... If events are underway, if somebody already has concerns about your performance that have been expressed, and this is, again, somebody who was not an exceeds expectation employee who was beloved by all of her prior managers and look at the history of Ms. Wyatt's employment... Hadn't she had satisfactory ratings? Accompanied by criticism of her performance. And so having a... Basically getting a C does not suggest that she is somehow hitting all of the marks, particularly when this is somebody who had been evaluated by two prior female managers, I might add, who had each of whom noted concerns about her performance. And Mr. Davis, who was her supervisor and was the person who evaluated her and was the person who personally made the decision to remove her from the project, not just based on what Mr. Mullen said, because there were others who had expressed concerns and others who have expressed concerns since, including Brian Smith, another manager, that all echo the same common refrain that Ms. Wyatt, while she was good in technical aspects of her position, she was not effective in moving projects forward. And I think... Here's the concern for me. I don't dispute that. But we're talking about whether summary judgment is grantable. And it seems to me that the background of this question is what does the record show? Could a reasonable juror look at that time frame and conclude that this woman was being punished because she complained about being touched? And your honor, respectfully, I don't... Yeah, so your position is a reasonable juror could not do that. There's no dispute of that. And here's why I think that firstly, there's ample authority cited in our brief of the notion that temporal proximity, whether it exists or not, summary judgment is still appropriate. Here, Ms. Wyatt, on September 2nd, she contends that this incident at the hotel happened. In fact, September 2nd. For the rest of September and well into October, she says nothing to anyone about anything. In fact, she actually goes to lunch with Mr. Mullen again and does not say anything about any alleged sexual harassment and doesn't say anything to anyone whatsoever about this September 2nd incident in the hotel room until December 3rd, four months later. And so I believe that we're talking about a reasonable jury, that a reasonable jury could not conclude that she took prompt action and made a report within a reasonable period of time, particularly given... I'm sorry, my time has any definition. You can finish your thought here. All right, thank you. Particularly given the nature of the accusation. If the accusation is that somebody has exposed themselves in a hotel room offsite, that is not something that you sit on for two months. It's certainly not something that you sit on for three months, which is how long it took for her to say anything to anybody. And within 10 days of that, Mr. Mullen was gone. He had been suspended immediately upon... Does that in itself though suggest that Mr. Mullen, in fact, did totally inappropriate things towards her? For summary judgment purposes, we're not for summary judgment, but I think there's a dispute of fact. It's a dispute of fact whether or not that happened. And so we're not suggesting for summary judgment that the court should not assume that that incident happened as she described. But of course, all incidents of misconduct... What you're trying to do then is say, she didn't report it soon enough. So that's her problem, as opposed to... It's a whole package. There are two components to it. Firstly, the EEOC versus AutoZone case, I do want to make sure we point to that case in particular for the notion that whether or not Mr. Mullen was a member of management or not, he was not her supervisor for purposes of the application of the Farragher-Ellis defense. He was a coworker. May I ask one side question? I'm sorry. Certainly. Earlier, did you raise the Farragher affirmative defense on the summary judgment briefs and the district court? We did, Your Honor. We did not use the words Farragher-Ellis. Of course, citing the Farragher-Ellis as a name is not required to assert it. It's something that we asserted in our answer. And we, in raising it in our opening brief, focused primarily on Mr. Mullen not being her supervisor, focused, of course, on the harassment. However distasteful it might be not being severe pervasive within the high bar that this court has set for that, notwithstanding the nature of the allegations, and also addressed the fact that there was no tangible employment action taken against her. I will note, though, that whether or not it was specifically raised, it was addressed in the briefing. And also, Ms. Wyatt was given fair notice to address it in her reply. And it was something that was addressed by the court in its brief. So this is not something that's coming out of the blue for the first time before this panel. And if there were a concern about it, it's something that could have been raised at the lower court and was not. And so this is a defense. First, it's a defense that's really not even necessary because Mr. Mullen was her coworker for purposes of this analysis. But even if he is, and again, the EEOC versus AutoZone case, you've got a store manager who is not a supervisor under Farragut-Ellis. I mean, if a store manager is not a supervisor for Farragut-Ellis who has immediate authority to hire and to make decisions of consequence involving employees, Mr. Mullen, who is over a project that includes a number of different people, is not going to be Ms. Wyatt's supervisor for purposes of this Farragut-Ellis defense when Mr. Davis, by all accounts, was her supervisor. Mr. Graham, what is your answer to Judge Moore? I hear you saying it was raised or it wasn't specifically raised. How was it raised for the purposes of the requirement of the rule? Yes, Your Honor, if I may. I'm not sure I'm getting your straight answer there. I certainly don't want to suggest I'm trying to dodge it. I'm not. I apologize if I've not answered it. Well, the reason for my asking it at the end was that I did recall your opponent saying that you hadn't raised it in the primary judgment. Certainly, Your Honor. I understand now. We did focus primarily on the first element of the Farragut-Ellis defense. Did not focus as much, in fact, may not have focused at all on Ms. Wyatt not taking the advantage of the corrective measures available to her in a timely manner. It was, however, something that was fully considered and developed in the record at the lower courts. It did not come as a surprise, particularly when it's something that was raised in our answer. And I would point to... Lower courts? Mr. Graham, what lower courts? I'm sorry. Court? I'm sorry. If I said courts, I meant the lower courts, the district court in this action, that it did consider and decide the Farragut-Ellis defense after it was... One thing that I would note, Your Honor, is this was something that was first raised... Our focus in the initial summary judgment brief was we had a number of different arguments that were put forward, as the court well knows. One of them being that Ms. Wyatt was not subjected to any tangible employment action and that Mr. Mullen was not her supervisor for purposes of the law. The issues though were... I think we're spending a lot of time on this and that what we'll do is we'll go back and look at the briefs because I think you're moving into a lot of different areas here, but we will definitely look at what was presented below. Thank you, Your Honor. And I believe we have also addressed this in our brief as well to show that whether or not it was specifically raised or not, that it is not error for the court to have considered and ruled upon the defense as it did. Thank you. My question is... My time is well over. I apologize, but I do appreciate your time and attention today. We ask again that the court affirm summary judgment in favor of Nissan North America. Thank you. And I think you have four minutes, Mr. Janney. Yes, Your Honors. Thank you. With regard to the Farragher-Ellis defense, I would simply point the court to page ID numbers 393 through 398. That is Nissan's summary judgment brief. They did not raise the Farragher-Ellis defense. They treated the case as if it were solely a co-worker harassment case. I'll let the court decide for itself upon reading those pages. And even if they had, where does that leave your case? Yes. If he's a co-worker, are you in trouble? No, we're not, Your Honor, because Ms. Wyatt did not unreasonably fail to take advantage of the policy. She reported it. She objected to Walter Mullen, which... That's the key. It's the reasonableness of her response, right? Correct, Your Honor. She reported it to numerous. She objected to Mullen, which counsel... We know what that is, factually. We know what that was. So that's the point that you are saying your strength is that he, this is co-worker or supervisor. We say a reasonable jury could conclude that he was a supervisor based on the record evidence, Your Honor. And even if he wasn't a supervisor, Ms. Wyatt did not unreasonably fail to take advantage of Nissan's policy. She objected to Mullen. Counsel said that that's insufficient. That's not right. EEOC versus Newbreed Logistics, 783 F 3rd 1057 at pages 1067-68 states that objecting to the harasser and telling him to quit harassing you is protected activity. With regard to the case that counsel cited EEOC versus AutoZone, that's an unreported decision, Your Honors. We would instead direct you to Smith versus Rock 10, 2016 reported decision where they're the court held that the defendant's delay of 10 days, waiting 10 days to do anything, a reasonable jury could find that to be an unreasonable delay. Here we have 29 days between November 10th, when Ms. Wyatt reported it to manager Butler and December 9th, when Nissan finally spoke to Walter Mullen, but nobody ever spoke to Walter Mullen about her complaints in September on November 10th, on November Mullen's complaint on November 19th. Nobody spoke to Mullen until November the 9th. That's unreasonable delay. A reasonable jury could find as much. December the 9th, right? December the 9th. I'm sorry, Your Honor. Thank you. We should find the, I mean, I'm just looking at all this who delayed and who, you know, we have the delay by the plaintiff here of what, did we agree that was three months? Not, no, it was September to November 10th. So two months. Never mentioning the harassment. It happened in September, right? September. And first reports it in three months later to anybody other than Mullen. Well, she reported the inappropriate touching to Butler on November 10th, but yes, with respect to the one incident, the hotel incident, she reported that. That took three months. Okay. That took three months, but the other sexual harassment she endured, she most certainly reported to David Butler, such that David Butler was compelled to go and call the So your opponent made a big deal about how your client was not performing adequately before these events happened. How do you respond to that? Your Honor, here's how I respond to that. If, if every time a manager does a performance review, there's constructive criticism in it and says, you can do better here. And here's how you can do better there. But the fact of the matter remains this. Ms. Wyatt received above or meets, and she wasn't a C, she received some above expectations in some categories meets expectations and other categories in 10 out of 10 categories. And then when Billy Davis rated her on a half a year, he rated her below expectations in five out of 10. So if you look at the evaluations as a whole, your honors, she was a set. She was above and meets expectations in every single rating category. Some snippets of you can improve here and there, not withstanding. I see my time is up your honors, unless you have any other further questions of me, that's all I have. Any further questions? Thank you. Thank you both for your argument and the case will be submitted and you may disconnect from the line. Thank you. Thank you.